UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br>v.<br><br>LAURA DENISE RUSSELL,<br><br>    Defendant. | Case No. 1:21-cr-00158-DCN-2<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Before the Court is Defendant Laura Russell's Motion to Reduce Sentence. Dkt. 204. The Government opposes the Motion. Dkt. 210.

Having reviewed the record and briefs, the Court finds the facts and legal arguments are adequately presented. Accordingly, the Court will decide the Motion without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B).[1] Upon review, and for the reasons set forth below, the Court GRANTS Russell's Motion.

The Court *rarely* grants motions such as this. When it imposes a sentence, it expects that sentence to be served. If exigent circumstances arise, however, the Court will evaluate

---

[1] Although this is a criminal case, the local civil rule regarding hearings applies as there is no corresponding criminal rule. *See* Dist. Idaho Loc. Crim. R. 1.1(f) (explaining that "all general provisions of the Local Rules of Civil Practice apply to criminal proceedings unless such provisions are in conflict with or are otherwise provided for by the Federal Rules of Criminal Procedure or the Local Rules of Criminal Practice").

MEMORANDUM DECISION AND ORDER - 1

those circumstances and determine if early release is appropriate. It finds that a *combination* of circumstances at play in this case warrants early release.

## II. BACKGROUND

On June 15, 2021, a grand jury indicted Russell—along with three co-conspirators—on charges of distributing drugs and laundering money. Dkt. 1. Russell eventually pleaded guilty (Dkt. 110) and the Court sentenced her to 40 months of incarceration (Dkt. 160). In crafting the 40-month sentence, the Court considered Russell's age and her physical health conditions such as Meniere's disease and hypothyroidism. It also varied downward based upon her minor role in the offense. The Court allowed Russell an opportunity to self-surrender. Dkt. 159, at 2.

Although Russell was supposed to surrender to the Bureau of Prison on July 20, 2023, she requested an extension of that date to consult with her medical providers regarding her various conditions. Dkt. 163. The Court granted her request. Dkt. 164. Russell was subsequently diagnosed with osteoporosis.

Russell self-surrendered to the Bureau of Prisons on September 9, 2023.

Russell was originally housed at the Federal Correctional Institution in Dublin, California ("FCI Dublin"). What happened at FCI Dublin this year has been widely publicized. However, the Court provides a brief synopsis here as it pertains to Russell.

Roughly three years ago, a series of news reports uncovered an alarming pattern of sexual abuse by correctional officers at FCI Dublin. Since those revelations, FCI Dublin has been severely understaffed and has struggled to overcome a culture of retaliation against its women prisoners.

MEMORANDUM DECISION AND ORDER - 2

In 2023, a group of female inmates filed a class action complaint against the Bureau of Prisons ("BOP") and others, alleging FCI Dublin staff were violating their constitutional rights by subjecting them to a culture of sexual abuse, failing to provide adequate medical and mental health care, and violating their First Amendment rights by retaliating against inmates who spoke out against prison conditions. *See generally California Coal. for Women Prisoners v. United States*, 2024 WL 1290766, at *2–8 (N.D. Cal. Mar. 15, 2024). On March 15, 2024, District Judge Yvonne Gonzalez Rogers granted class certification. *Id*. at *11. Additionally, because FCI Dublin was a "dysfunctional mess," Judge Gonzalez Rogers ordered the appointment of a special master to oversee the facility. *Id*. at *1, 25. Within one month, however, the BOP suddenly closed FCI Dublin and transferred all inmates to other facilities.

As FCI Dublin was being closed, twenty-one inmates filed motions for compassionate release to Judge Gonzalez Rogers. Because she was not the sentencing Judge Gonzalez Rogers denied those motions. However, she drafted a letter to all judges who might have occasion to review a motion for compassionate release from inmates at FCI Dublin. As part of that letter, Judge Gonzalez Rogers relayed the following information:

> In January 2024, I presided over a week-long evidentiary hearing with respect to a civil suit and conducted an unannounced, nine-hour site visit preliminarily finding that the [] population at FCI Dublin had limited to no access to constitutionally adequate medical and mental health care, programming, and timely administrative relief. Thus, the time at FCI Dublin was likely "harder time" than other institutions. Programming was effectively non-existent.

MEMORANDUM DECISION AND ORDER - 3

Dkt. 204-15 (copy of letter in *California Coal. For Women Prisoners v. United States,* Case No. 4:23-cv-04155-YGR, Dkt. 301-3). She further noted that many of the inmates were "the subject of [] sexual abuse, harassment, and retaliation by staff seeking to cover up their own misconduct." *Id*.

As it pertains to her, Russell claims her time at FCI Dublin was very difficult. She argues the medical treatment she received for her conditions was marginal at best and that treatment providers at FCI Dublin did not follow any of her primary care physicians' recommendations that would have effectively managed her conditions.

She also alleges that a guard purposefully and repeatedly slammed a cell door into her elbow resulting in significant damage.[2] And then, when Russell complained of the event to FCI Dublin staff, that same guard retaliated against her.

Russell was transported to FMC Lexington in Kentucky upon the closure of FCI Dublin. Her journey was long and painful. As Judge Gonzalez Rogers noted of the events, " . . . BOP's operational plan for [the] closure of FCI Dublin was ill-conceived and, like Swiss cheese, full of holes." *California Coal. For Women Prisoners v. United States,* 4:23-cv-04155-YGR, Dkt. 300, at 1.

On July 10, 2024, Russell filed the instant motion requesting that she be released early based on her medical conditions (and the sub-par medical care she has received while incarcerated) and the overall conditions she endured at FCI Dublin.

Since that filing, Russell has provided two supplements to the Court indicating that,

---

[2] Of note, an x-ray of Russell's elbow after the incident did not detect any significant damage.

MEMORANDUM DECISION AND ORDER - 4

while she has received better medical treatment since arriving at FMC Lexington, she was recently hospitalized with "stroke-like symptoms," which medical staff believe are related to her Meniere's Disease. Dkt. 212. She also notified the Court that an MRI of her elbow shows she is now suffering from nerve damage (which could not have been seen on an x-ray) and ultimately may suffer forever from "ulnar neuritis, olecranon bursitis, and [] associated pain, swelling, numbness, and impairment of physical strength and dexterity." Dkt. 214, at 3.

The government opposes Russell's request, arguing she has not presented any extraordinary circumstances warranting release at this time. *See generally* Dkt. 210.

As it currently sits, Russell's projected release date is January 11, 2026. However, she is expected to be released to community confinement as early as March 2025, and could be eligible for home confinement in December 2025.

### III. LEGAL STANDARD

Russell seeks compassionate release under the First Step Act ("FSA"), amended 18 U.S.C. § 3582(c)(1)(A), which allows a court to modify a sentence under certain circumstances. In order to grant compassionate release, a district court must, as a threshold matter, determine whether a defendant has exhausted his or her administrative remedies. *Id*. Next, a district court may grant compassionate release only if "extraordinary and compelling reasons warrant such a reduction," and the reduction is "consistent with applicable policy statements" issued by the U.S. Sentencing Commission.[3] *Id*. If the latter

---

[3] Congress did not define what constitutes "extraordinary and compelling" reasons; instead, it deferred consideration of the matter to the Sentencing Commission. *Rodriguez*, 424 F. Supp. 3d at 681 (citing 18

criteria are met, the district court must then consider the sentencing factors set forth in 18 U.S.C. § 3553(a) to the extent they are applicable. *Id.*; *United States v. Rodriguez*, 424 F. Supp. 3d 674, 680 (N.D. Cal. 2019).

The policy statements at U.S.S.G. § 1B1.13 state that "extraordinary and compelling reasons" include: (1) a defendant's serious medical condition; (2) a defendant's age combined with serious deterioration in physical or mental health due to the aging process; (3) a defendant's family circumstances where the defendant becomes the only available caregiver for a close relative; (4) a defendant's suffering of abuse by an employee or contractor of the BOP; (5) any other circumstance or combination of circumstances of similar gravity; or (6) the defendant's subjection to an unusually long sentence where the defendant has already served at least ten years of the sentence. *Id.* at § 1B1.13(b). The statements also assert that, before a sentence may be reduced, the Court must find that the defendant is not a danger to the safety of any other person or to the community. *Id.* at § 1B1.13(a)(2).

Until recent amendments, U.S.S.G. § 1B1.13 addressed only motions brought by the Director of the BOP—and not those brought by defendants individually. *See United States v. Aruda*, 993 F.3d 797, 801–02 (9th Cir. 2021). To be sure, district courts were free to consult the Guideline's statements as persuasive authority, but the Ninth Circuit made clear that the statements were not binding. *Id.* at 802. However, under recent amendments,

---

U.S.C. § 994(t) ("The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of Title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples.").

MEMORANDUM DECISION AND ORDER - 6

U.S.S.G. § 1B1.13 expressly applies to motions brought by the BOP Director *and* to those brought by individual defendants. U.S.S.G. § 1B1.13(a). Along with its sister district courts in the Ninth Circuit, the Court understands these amendments to resolve the discrepancy highlighted in *Aruda* and to make U.S.S.G § 1B1.13 binding. *See United States v. Brugnara*, 2024 WL 332867, at *2 (N.D. Cal. Jan. 28, 2024); *United States v. Garcia Nava*, 2024 WL 221439, at *2 (S.D. Cal. Jan. 19, 2024); *United States v. Cunningham*, 2024 WL 50908 (D. Mont. Jan. 4, 2024); *United States v. Brown*, 2023 WL 8650290, at *3 (W.D. Wash. Dec. 14, 2023).

In any event, the catch-all clause at U.S.S.G. § 1B1.13(b)(5) affords the Court significant leeway in defining precisely what qualifies as an extraordinary and compelling reason sufficient to justify release.

## IV. DISCUSSION

### A. Exhaustion of Administrative Remedies

As noted, the FSA allows a motion for modification to be made by either the Director of the BOP, or by a defendant "after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" 18 U.S.C. § 3582(c)(1)(A).

Russell motioned the Warden at FCI Dublin for release multiple times, most recently on December 11, 2023. Dkt. 204-3. The Warden did not respond; however, 30 days has long-since passed from that date. Thus, Russell's July filing in this case was

timely. As a result, the Court finds Russell has exhausted her administrative remedies and will continue to the next stage of its inquiry.

### B. Extraordinary and Compelling Reasons

The Court must next consider whether "extraordinary and compelling reasons" warrant a permanent reduction in Russell's sentence, and whether "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(ii). Russell bears the burden of establishing that extraordinary and compelling reasons exist to justify compassionate release. *United States v. Holden*, 452 F. Supp. 3d 964, 969 (D. Or. Apr. 6, 2020).

Russell essentially makes two arguments in her Motion for Release. First, she alleges her medical conditions—and the lackluster care she has received for those conditions—is extraordinary under the medical prong of the guidelines and justifies release. Second, she alleges the generally poor conditions at FCI Dublin—and specifically the injury she suffered at the hands of a guard—are sufficient under the fourth prong of the guidelines. To be sure, Russell also alleges her transportation to FMC Lexington was arduous and painful and that her age and lack of criminal history support release. She also asserts she has a suitable plan in place should the Court grant her request. By in large, however, the Court will couch Russell's claims into the two aforementioned categories.

First, under the Sentencing Guidelines, the Court must determine whether Russell is "suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." U.S.S.G. § 1B1.13(b)(1)(C).

MEMORANDUM DECISION AND ORDER - 8

Russell argues her medical care was (and is) mismanaged and inadequate. She provides documentation from her pre-incarceration physicians outlining the type of care Russell should receive for her conditions. For example, one doctor notes that Russell should be given a certain type of medication for her Meniere's disease and that she does not tolerate other medications well. The BOP apparently did not have the medication Russell was previously prescribed and, unfortunately, provided her a medication she did not tolerate well. Russell alleges this has caused a worsening of her Meniere's disease. Her physicians agree. Dkt. 204-5. Russell also claims that she was not provided *any* medication for her osteoporosis and that the medication she was on for hypothyroidism was actually over-prescribed (e.g. she was on the medication *too* long which resulted in complications).

The Court typically defers to medical professionals when it comes to medical diagnosis and treatment and understands there can be differing opinions when it comes to acceptable treatment. Thus, the Court wants to be clear that it is not making a finding of medical indifference or any type of malfeasances on the part of the BOP medical staff at this time; this is not a 42 U.S.C. § 1983 action or civil suit for damages related to medical neglect. But the Court does find that the evidence in the record suggests Russell's conditions—specifically her Meniere's disease, osteoporosis, and hypothyroidism—have deteriorated. In fact, it appears the "stroke-like" episode that recently landed her in the hospital is connected to her Meniere disease and would likely not have occurred if she was receiving adequate treatment.[4]

---

[4] The Court is not able to know whether or not Russell's assertion about this incident is accurate. The hospitalization *could* be an indication that Russell is not receiving adequate treatment. Or it could simply

The Government has not rebutted Russell's evidence in any meaningful way. It simply claims that Russell's assertions of medical mismanagement are unsubstantiated.

Upon a review of the evidence in the record, the Court finds this is not a situation where Russell has wholly failed to receive medical care. She has received medical care. However, the Court is concerned the treatment she received has not been sufficient under the circumstances. For example, it is concerning that, despite treatment, Russell's Meniere's disease appears to be deteriorating. Importantly, deterioration of a medical condition is the primary question under the health subsection of § 1B1.13(B)(1)(C). In addition, it is concerning that it took over one year to fully evaluate the ramifications of the injury Russell suffered at the hands of a guard at FCI Dublin. In sum, the Court finds Russell's current medical conditions—and the level of care she is receiving for those conditions—weigh in favor of release.

Second, Russell alleges she suffered an abuse by an employee of the BOP and that this qualifies under the fourth prong of the guidelines which state a "physical abuse resulting in serious bodily injury . . . that was committed by . . . a correctional officer" may warrant release. § 1B1.13(b)(4)(B).

The Government points out that "serious bodily injury" is a defined term and means an injury "involving extreme physical pain or the protracted impairment of a function of a bodily member, organ, or mental faculty; or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation." § 1B1.1 (application note 1(M)). The parties

---

mean that her condition is worsening, and the hospitalization would have occurred *regardless* of her treatment regime. Regardless, the episode is still a concern.

dispute whether Russell's injury qualifies under that definition. Along with this dispute, another problem exists. In order for this particular subsection to apply, the misconduct that resulted in the injury must be "established by a conviction in a criminal case, a finding or admission of liability in a civil case, or a finding in an administrative proceeding, unless such proceedings are unduly delayed or the defendant is in imminent danger." § 1B1.13(b)(4)(B). Russell does not dispute that the incident has not (thus far) resulted in any type of liability—formal or otherwise—but affirms there was "undue delay" in the administrative proceeding because FCI Dublin closed after Russell submitted her request for administrative review.[5]

Here, not only has Russell claimed she suffers from "physical pain" and the "impairment of a function of a bodily member" as the result of the incident, but her recent MRI shows she will likely continue to have pain and problems with this injury down the road. This leads the Court to find her injury likely qualifies under the Guidelines' definition of "serious bodily injury."

Likewise, with FCI Dublin closed, it is difficult *not* to find there has been a significant delay in the administrative proceeding regarding the guard repeatedly slamming the cell door into Russell's elbow. Whether this was an accident (as the Government suggests) or an assault (as Russell suggests) remains undetermined. At a minimum, however, this lack of administrative review cannot be held against Russell.

---

[5] Russell submitted a Request for Administrative Remedy on October 9, 2023. Dkt. 204-10. She submitted another Request on November 30, 2023. Dkt. 204-12. The Warden acknowledged receipt of Russell's November 30, 2023 request on December 13, 2023, and explained staff would look into the incident. Dkt. 204-11. Nothing happened after that response.

The Court's observations above—that the injury was likely "serious," and that the misconduct *does not* have to be determined by formal proceedings in light of FCI Dublin's closure—coupled with the unrefuted reality that FCI Dublin was a "dysfunctional mess," support Russell's request for early release under the fourth prong of the Guidelines.

The Court would also note that Russell's age (66), criminal history (zero), and solid plan for release weigh in her favor. Importantly, Russell has not had a single incident or disciplinary issue while in custody, she has paid off the small financial obligation imposed by the Court, and she has "demonstrated an above average readiness for reentry into society." Dkt. 204-19, at 2–3.

Finally, the Court must address the 18 U.S.C. § 3553(a) factors to the extent any are applicable and whether releasing Russell early is consistent with the goals of sentencing.[6]

Although Russell was part of a lengthy and lucrative conspiracy, she played a lesser

---

[6] Under the "Factors To Be Considered in Imposing a Sentence," this statute provides the "court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—[. . .]":

> (2) the need for the sentence imposed—
>
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . .

18 U.S.C. § 3553(a).

role than her co-conspirators. As already noted, Russell has no criminal history, and the Court is confident she will not commit any crimes in the future. Russell is also not a danger to society given her non-existent criminal history, exemplary behavior while incarcerated, and concrete plan for reentry into society. Finally, the Court must decide whether the time Russell has spent incarcerated thus far reflects the seriousness of the offense and is sufficient punishment for her criminal conduct. Russell alleges she has learned her lesson and that the severity of the time she spent incarcerated at FCI Dublin should be weighted in her favor.

The Court appreciates Judge Gonzalez Roger's comments that those serving at FCI Dublin during the recent scandal served "harder time" than they might have otherwise had they been housed at other institutions. *See* Dkt. 204-15. That said, "[t]here is no federal statute that permits shorter sentences for inmates serving 'harder' time in certain prisons." *United States v. Nevarez-Ledezma*, 2021 WL 4430157, at *1 (D.N.M. Sept. 27, 2021). Judges in this District have yet to recognize such. *See United States v. Shaw*, 2022 WL 4941245, at *2 (D. Idaho Oct. 4, 2022) (finding "no authority" for request for hard time credit).[7]

Thus, the Court is not formally finding Russell served "hard time," or that some mathematical calculation should be used to account for the time spent at FCI Dublin vis-à-

---

[7] Russell contends that at least one court has granted a motion for early release based upon the abusive conditions at FCI Dublin. The decision in that case—*U.S. v. Chivira*, 2023 WL 3612389 (S.D. Cal. May 23, 2023)—is scant on details. It does mention the petitioner requested relief from "abuse and retaliation . . . while in custody," but: (1) there is no indication that abuse took place at FCI Dublin, (2) the court only vaguely listed "the circumstances of her incarceration" as a reason for release, and (3) the Government did not oppose the request. *Id*. at *2. The Court will take Russell's representations that the case involved FCI Dublin, but without more analysis, it is hard to utilize that case as it relates to Russell.

MEMORANDUM DECISION AND ORDER - 13

vis Russell's overall sentence. However, the Court determines that, when considering the "most up-to-date picture" of Russell, her crime, and her punishment, the time she has spent incarcerated illustrates that the goals of 18 U.S.C. § 3553(a) have largely been accomplished at this time. *See Pepper v. U.S.*, 562 U.S. 476, 492 (2011).

## V. CONCLUSION

Russell properly exhausted her administrative remedies. While any one of Russell's reasons for early release may not be persuasive on its own, the Court finds the combination of: (1) Russell's medical conditions, (2) the treatment of those conditions and the fact they are deteriorating, (3) her injury at FCI Dublin, and (4) her behavior while in custody sufficiently support her request for early release. The Court also finds a reduction in Russell's sentence is not inconsistent with the 18 U.S.C. § 3553(a) sentencing factors. Additionally, considering all credits Russell has received and the fact that she will likely be released to community confinement in early 2025, the Court finds a departure now will not undermine its original sentence.

Weighing all of these considerations, the Court GRANTS Russell's Motion to Reduce Sentence and reduces her sentence to <u>time served.</u>

## VI. ORDER

The Court **HEREBY ORDERS**:

1. Russell's Motion to Reduce Sentence (Dkt. 204) is **GRANTED**
2. Upon release, Russell will begin her two-year term of supervision as originally imposed by the Court, will all conditions set at sentencing to remain the same.

MEMORANDUM DECISION AND ORDER - 14

Within 72 hours of release, Russell shall contact the U.S. Probation Office to receive further instructions.

DATED: November 21, 2024

_____
David C. Nye
Chief U.S. District Court Judge